NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0760n.06
Filed: December 15, 2008

No. 07-3960

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CHARLES P. MARTIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF A |
| | ) | FINAL ORDER OF THE |
| UNITED STATES DEPARTMENT OF LABOR and | ) | ADMINISTRATIVE REVIEW |
| UNITED PARCEL SERVICE, | ) | BOARD, UNITED STATES |
| | ) | DEPARTMENT OF LABOR |
| Respondents. | ) | |
| | ) | |
| | ) | |

Before:  MARTIN and KETHLEDGE, Circuit Judges, and CARR, District Judge.[*]

KETHLEDGE, Circuit Judge.  Charles P. Martin seeks review of a decision of the

Administrative Review Board ("ARB") of the United States Department of Labor.  He asserts that

the ARB failed to address his claims under the Surface Transportation Assistance Act of 1982, 49

U.S.C. § 31105 (the "STAA").  We disagree, and affirm.

I.

Prior to his termination on January 28, 2002, Martin was a tractor-trailer driver for United

Parcel Service, Inc. ("UPS"), driving a round-trip route from Knoxville, Tennessee, to Atlanta,

---

[*]The Honorable James G. Carr, Chief Judge of the United States District Court for the
Northern District of Ohio, sitting by designation.

Georgia. His route was time-sensitive, requiring final delivery of his payload in Knoxville at 3:45 a.m. each morning. Martin concedes, however, that in the four months immediately preceding his termination, he arrived late for all but one of his deliveries. Martin also concedes that he made unrecorded stops on his route, exceeded allotted meal-break periods, and falsified timecard entries.

These infractions led to progressive discipline by UPS. On December 4, 2001, Martin exceeded his meal period by 45 minutes, made a stop at a service station without logging the stop on his timecard, and arrived 90 minutes late in Knoxville. Martin told his supervisor that he was late because he had become "sick and it would be unsafe for me to continue on." Martin told the supervisor that UPS was "in violation of" the STAA because it "states that if you feel sick, to pull over, if you feel fatigued or sick, to pull over . . . if your life or the lives around you are in danger." The supervisor told Martin that, because he exceeded his one-hour meal time, UPS would be issuing him a letter of intent to terminate.[1]

Nonetheless, the infractions continued. On December 7, 2001, Martin exceeded his meal period by 23 minutes, made unrecorded stops, and was 90 minutes late. Again, his supervisor confronted him. Martin explained that he "had become very sleepy while driving . . . and could not go any further."

On December 13, 2001, UPS issued a warning letter to Martin for his failure to follow instructions regarding his meal periods on December 4 and 7. The letter warned Martin that if he

---

[1]UPS did not issue this letter. Instead, it issued a warning letter on December 13, 2001, as discussed below.

continued to fail to comply with meal-period policies, he would face "further disciplinary action up to and including discharge."

Martin did not heed the warning. On December 28, 2001, and again on January 4, 2002, Martin exceeded meal periods, made unrecorded stops, and arrived late. On January 8, 2002, he met with UPS management and a union representative to discuss his delinquency. Martin explained that he had trouble staying awake during his runs. His supervisor told him that UPS intended to terminate his employment for failure to follow instructions regarding his meal periods.

The next day, UPS sent Martin a "Letter of Intent to Terminate." Under the terms of a collective bargaining agreement ("CBA") between the union and UPS, however, Martin was entitled to continue working for UPS until a formal grievance process ended. He did so.

Martin's violations continued still. UPS conducted direct surveillance of Martin on his January 16, 22, and 25 runs, and observed him make several stops at a service station. Martin did not log any of these stops on his timecards.

For these violations, UPS terminated Martin's employment on January 28, 2002, and escorted him off its premises. In a January 31, 2002 termination letter, UPS stated that Martin was terminated for just cause under the CBA, for "acts of dishonesty, [and] falsifying [his] timecard[,] which resulted in theft of paid time."

B.

Martin filed an STAA complaint on June 4, 2002, alleging that he engaged in STAA-protected activity when he informed his supervisor on December 12, 2001, and January 8, 2002, that

he had been unable to timely complete his routes due to fatigue and illness. He alleged that UPS's subsequent discipline was unlawful retaliation for his STAA complaints.[2]

The Occupational Safety and Health Administration investigated and found no violation by UPS. Martin objected, and requested a hearing before an administrative law judge ("ALJ") of the United States Department of Labor. The ALJ issued a Recommended Decision and Order, in which she found that Martin "was disciplined and discharged for his consistent failure to follow instructions on how he should take and record his required meal period, and for acts of dishonesty," not in retaliation for his STAA complaints.

Martin appealed to the ARB, pursuant to 49 U.S.C. § 31105(b) and 29 C.F.R. § 1978.109. The ARB concurred with the findings of the ALJ and denied Martin's complaint. It found that the ALJ's finding that "UPS did not discriminate against Martin in violation of the STAA" was supported by substantial evidence.

Martin now petitions this Court for review of the ARB's final decision and order, pursuant to 49 U.S.C. § 31105(d) and 29 C.F.R. § 1978.110.

II.

We review the ARB's decision under the STAA to "determine whether it was supported by substantial evidence, which is 'such relevant evidence as a reasonable mind might accept as adequate

---

[2] 49 U.S.C. § 31105(a)(1)(B) provides that an employer "may not discharge an employee, or discipline or discriminate against an employee . . . because . . . the employee refuses to operate a vehicle because . . . the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security[,]" or "the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition[.]"

to support a conclusion.'" *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Martin does not argue that the ARB's decision was unsupported by substantial evidence. Instead, he argues that the ARB failed to address his STAA claims with respect to the December 13, 2001 warning letter and the January 9, 2002 intent-to-discharge letter. He further argues that the ARB should not have reached his claim regarding the January 28, 2002 discharge because "it was not properly before the ALJ or the [ARB]."

Martin asserts that the ARB "sidestepped" his claims regarding the first two letters by "uph[olding] the second discharge for alleged dishonesty." Pet'r Br. at 22-23. Martin argues that "this case should be remanded to the ARB with instructions to determine whether UPS violated the STAA by issuing the December 13, 2001 and January 9, 2002 disciplinary notices[.]" *Id.* at 26.

We disagree. The ARB unmistakably considered and rejected Martin's STAA claims with respect to the December 13 and January 9 letters. It wrote:

> *We reject Martin's contention that* '[a]ssuming arguendo [he] was properly discharged for dishonesty, *he is still entitled to relief under the STAA for the disciplinary letters issued on December 13, 2001 and January 9, 2002.*" The December 13, 2001 Warning Notice addresses Martin's "continuing failure to follow instructions regarding the taking of the contractual meal period." The January 9, 2002 Intent to Discharge Notice points to his "failure to take [his] meal periods as instructed" and "additional violations of the meal policy with the most recent occurrences being December 28, 2001 and January 4, 2002." Again, Martin's contention that he was sick on certain dates does not explain his failure to follow UPS's policy regarding the recording of meal periods.

J.A. 11 (emphasis added).

Martin does not argue that this finding was unsupported by substantial evidence. He has therefore waived that argument. *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996). In any case, the ARB's findings were supported by substantial evidence, including Martin's undisputed and repeated disciplinary violations.

Martin's second argument—that the ARB erred in addressing his January 28 discharge—is also meritless. Martin argues that this discharge was "not properly before the ALJ or the [ARB]" because his STAA "complaint did not allege that UPS' attempt to discharge him on January 28, 2002 was motivated by protected activities." Pet'r Br. at 12, 18. Martin asserts that "[u]nder the *Steelworkers* trilogy of Supreme Court decisions, the [ARB] lacked jurisdiction to decide the merits of the January 28, 2002, discharge." Pet'r Br. at 11 (footnote omitted) (citing *United Steelworkers v. American Mfg.*, 363 U.S. 566 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960)).

Those cases are inapposite here. Each addressed the authority of a court to interpret provisions of a collective bargaining agreement, where the parties had agreed to submit those issues to an arbitrator. Martin's claims did not involve interpretation of the CBA; rather, they were STAA claims, over which the ARB had jurisdiction under 49 U.S.C. § 31105(b). Martin concedes that the ARB had authority to address his second discharge. *See* Pet'r Br. at 18 ("Martin does not dispute that the ALJ and the [ARB] could determine if the January 28, 2002 discharge violated the STAA"). Indeed, though he now claims to the contrary, Martin himself placed that issue before the ARB. He argued there that "the articulated reason for discharging [him] on January 28, 2002 [was] a pretext for discriminati[ng]" against him for his STAA complaints. J.A. 740. Having presented this

challenge to the ARB, Martin cannot now complain that the ARB addressed it. As it did with respect to Martin's December 13 and January 9 disciplinary notices, the ARB considered and rejected his January 28 STAA claim. That finding too was supported by substantial evidence, including Martin's undisputed acts of falsification of his timecards on January 16, 22, and 25, 2002.

III.

For these reasons, we affirm the decision of the ARB.